1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| SPERRY COMMERCIAL, INC., a California Corporation, | Case No. 8:15-cv-01229-DOC-JCG |
| Plaintiff, | **ORDER FOR ENTRY OF STIPULATED PROTECTIVE ORDER** |
| vs. | |
| ZURICH AMERICAN INSURANCE COMPANY, et al., | Complaint Filed:   May 13, 2015 |
| Defendant(s). | Trial Date:          August 8, 2017 |

17

18          Having reviewed the Parties' Joint Stipulation to Enter Proposed Protective

19   Order, IT IS HEREBY ORDERED:

20   1.       A.   <u>PURPOSES AND LIMITATIONS</u>

21          Discovery in this action is likely to involve production of confidential,

22   proprietary, or private information for which special protection from public

23   disclosure and from use for any purpose other than prosecuting this litigation may

24   be warranted. Accordingly, the parties hereby stipulate to and petition the Court to

25   enter the following Stipulated Protective Order. The parties acknowledge that this

26   Order does not confer blanket protections on all disclosures or responses to

27   discovery and that the protection it affords from public disclosure and use extends

28   only to the limited information or items that are entitled to confidential treatment

1   under the applicable legal principles. The parties further acknowledge, as set forth

2   in Section 12.3, below, that this Stipulated Protective Order does not entitle them to

3   file confidential information under seal; Civil Local Rule 79-5 sets forth the

4   procedures that must be followed and the standards that will be applied when a

5   party seeks permission from the court to file material under seal.

6       B. <u>GOOD CAUSE STATEMENT</u>

7       This action involves an insurance dispute under a first-party property

8   insurance policy issued by defendant Zurich American Insurance Company

9   ("Zurich") to plaintiff Sperry Commercial, Inc ("Sperry").   Sperry is a privately-

10  held commercial real estate firm that provides to its clients, *inter alia,* real estate

11  sales, management and leasing services for different projects located throughout the

12  United States.

13      Presently, the dispute raised in the Complaint is limited to Zurich's decision

14  disclaiming coverage for physical damage to *one* of the buildings which Sperry

15  manages and operates in the greater Atlanta, GA area.   That building is located at

16  5300 Oakbrook Parkway, Building 300, Norcross, Georgia ("Building 300").

17  Building 300 is one of eleven (11) buildings located in Norcross, GA that Sperry

18  collectively manages and operates as "Oakbrook North."

19      Sperry has also presented claims to Zurich involving an additional *sixteen*

20  buildings which are all located in another part of Norcross, GA that with one

21  exception Sperry collectively manages and operates as "Gwinnett Park".[1]   Based

22  upon the information presently available and preliminary opinions from Zurich's

23  expert consultants, the parties anticipate that Zurich will disclaim coverage for

24  some, if not all, of the sixteen Gwinnett Park Buildings.   The parties contemplate

25  that any such denials of coverage are likely to result in Sperry amending its current

26  complaint to include those buildings.

---

[1] There are an additional *three* (3) buildings that are part of Sperry's "Gwinnett Park" group of buildings for which no claim has been made to Zurich.

27

28

1    In the parties' September 18, 2015 Joint Rule 26(f) Report [Docket No. 9],
2    one of the key legal issues Zurich identified was *"[w]hen the losses actually*
3    *manifested* and which policy, if any, provides coverage for the claimed losses." (*Id.*
4    at 7:25-8:3) (Emphasis added).    Subsequently, Zurich propounded written
5    discovery to Sperry requesting, among other things, "any and all documents"
6    referring to "any damage to the Property for which you are presenting [a] claim
7    under the Policies" and "[a]ny and all tenant files pertaining to the Property
8    between the time you first leased any portions thereof to anyone and May 30, 2014.
9    As used herein 'tenant files' include but are not limited to, (i) leases and documents
10   related thereto, (ii) Documents pertaining to all communications with the tenant's
11   representatives, (iii) maintenance/repair Documents, (iv) lease payments and
12   documentation of any requested or granted concessions, reductions or refunds and
13   (v) inspections or other Documents reflecting the conditions of the premises or
14   building(s) and changes thereto."

15   Sperry has identified *three specific categories* of documents which are
16   responsive to one or more of Zurich's requests, but which should not be produced
17   unless and until this Court enters a protective order: (1) the leases for Sperry's
18   current and former tenants at Building 300; (2) Oakbrook North's monthly rent rolls,
19   which include those applicable to Building 300 and (3) the "Management Reports"
20   that Sperry prepares for Oakbrook North, which includes Building 300. As
21   explained below in greater detail, a protective order is necessary to prevent the
22   public dissemination of these documents because (a) the documents contain
23   confidential financial and other information regarding how Sperry conducts its
24   business operations generally and at Oakbrook North, in particular; (b) the
25   documents contain confidential and private financial and other information
26   regarding the third-party tenants occupying space at 5300 Oakbrook Parkway,
27   Building 300; and/or (c) Sperry Commercial owes a duty to its Oakbrook North

28

project clients not to publicly disclose confidential financial and other information regarding said buildings.

(1) <u>Leases for Sperry tenants occupying Building 300</u>.  The leases in question contain, *inter alia*, private financial information of the tenants occupying space at Building 300, including bank account information, information regarding rent and security deposits, and information regarding the contemplated use for the space. These third parties have a reasonable expectation of privacy that the financial information they had supplied to Sperry in conjunction with the leases, as well as the amount of monies they pay for rent, will not be publicly disclosed.  In addition, Sperry also has an interest in protecting the leases from disclosure because it could adversely affect its ability to negotiate future leases with tenants and/or potential tenants if the rates it charges tenants and other lease terms are publicly available. Moreover, if outside brokers know Sperry's rent rates, cam information, and lease expirations, they would solicit tenants to lease.

(2) <u>Oakbrook property monthly rent rolls</u>.  The Oakbrook property monthly rent rolls contain, among other things, private rent information, Sperry Commercial's rental income on a month-by-month basis, and what each tenant pays for rent.  Again, as with the leases described above, third parties have a reasonable expectation of privacy that the financial information they had supplied to Sperry in conjunction with the leases, including the amount of money they pay for rent, is not publicly available.  Further, Sperry also has an interest in protecting the leases from disclosure because it could adversely affect its ability to negotiate future leases with tenants and/or potential tenants if the rate it charges tenants are publicly available. Further, if outside brokers know Sperry's rent rolls, they would solicit tenants to lease.

(3) <u>Oakbrook North monthly "Management Reports."</u> The "Management Reports" provide comprehensive financial information regarding the entire Oakbrook North project, including discussions and descriptions regarding vacancy

-4-

rates, prospective clients, rental strategies, property conditions, Oakbrook North "loan" balance and payment status; and ledgers and other financial data reflecting all outlays by Sperry on a monthly basis as to each and every building in the Oakbrook North project, including the subject Building 300. This information constitutes Sperry's confidential financial and proprietary information about how its business is run and its profitability. Sperry Commercial would be harmed by the disclosure of this information because it could give another company a competitive advantage against Sperry. Relatedly, if Sperry's competitors obtain a competitive advantage against Sperry, its clients for the Oakbrook North project would also be harmed by the public disclosure of the monthly "Management Reports." The "Management Reports" also include bank account information and investor information that, if made public, could leave Sperry and its investors open to identity theft.

In addition to the information from Sperry, discovery has also been propounded to non-party witnesses based on Sperry's contention that the physical damage to its property was caused by vibrations from blasting at Vulcan Material Company's nearby quarry. Vulcan has asserted that its response to the discovery calls for disclosure of confidential business information and has requested that its document disclosure be subject to confidentiality under a protective order.

The information which the parties seek to protect implicate confidential business or financial information of Sperry and/or third parties, information implicating privacy rights (including that of third parties), is otherwise generally unavailable to the public and/or may be privileged, or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the

-5-

conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter.  It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

DEFINITIONS

2.1     Action:  Sperry Commercial, Inc. v. Zurich American Insurance Company, *et al.*, Case No. 09 CV 1373 DMS (RBB).

2.2     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.3     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.4     Counsel: Outside Counsel of Record and House Counsel (as well as their support staff).

2.5     Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6     Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7     Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8    House Counsel: attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 Outside Counsel of Record: attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

2.11 Party: any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15 Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or

compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge. This Order does not govern the use of Protected Material at trial.

4.     DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.     DESIGNATING PROTECTED MATERIAL

5.1     Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2     <u>Manner and Timing of Designations.</u> Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3    The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is

entitled under the Producing Party's designation until the Court rules on the challenge.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff;

(f) professional jury or trial consultants, mock jurors, and Professional

Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h) during their depositions, witnesses ,and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

8. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within

-13-

14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    INADVERTENT PRODUCTION   OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

12.    MISCELLANEOUS

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13.    FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel

-15-

are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

14. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

IT IS SO ORDERED.

Dated:  February 18, 2016

_____
The Honorable Jay C. Gandhi
United States Magistrate Judge

# **EXHIBIT A**

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

*Sperry Commercial, Inc. v. Zurich American Insurance Company, et al.*

U.S. District Court for the Central District of California, Santa Ana Division

Civil Action No. Case No. 09 CV 1373 DMS (RBB)


I,_____ , declare under penalty of perjury under the laws of the United States and the State of California that I have read and understand in its entirety the Protective Order in the above-referenced lawsuit, and agree to adhere and to be bound by its terms. I understand that any unauthorized disclosure of confidential information constitutes a violation of this Court's Protective Order, for which I may be held in contempt of court. I hereby submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcement of the Protective Order.


Date:                                          Name:


_____                       _____

[PROPOSED] ORDER FOR ENTRY OF PROTECTIVE ORDER   CASE NO. 8:15 CV 01229 DOC JCG